FILED
2020 Sep-30  PM 02:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| BYRONNICA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 6:19-cv-01244-SGC |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Byronnica Davis, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI"). Davis timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Davis has at least a high school education and past relevant work experience as a dietary supervisor. (Tr. at 23). In her application for SSI, filed on October 24, 2016, Davis alleged she became disabled on July 8, 2015, due to a variety of physical

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

impairments. (*Id.* at 65-66). After her claims were denied, Davis requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 10). Following a hearing, the ALJ denied Davis' claims. (*Id.* at 10-25). Davis was 50 years old when the AJL issued his decision. (*Id.* at 23, 25). After the Appeals Council denied review of the AJL's decision (*id.* at 1), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Davis commenced this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not

2

disabled.  *Id.* at § 416.920(a)(4)(i) and (b).  At the first step, the ALJ determined Davis has not engaged in substantial gainful activity since October 24, 2016, the date on which she filed her application for SSI.  (Tr. at 12).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at § 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined Davis has the following severe impairments: obesity, C3-6 fusion, lumbar degenerative disc disease, osteoarthritis, pain syndrome, and fibromyalgia.  (Tr. at 12).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  *Id.* at § 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined Davis does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 17).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  20 C.F.R § 416.920(e).  At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at § 416.920(a)(4)(iv) and (e).  If the claimant is capable of performing his or her past relevant work, the Commissioner will find the claimant is not disabled.  *Id.* at § 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Davis has the RFC to perform a limited range of light work.  (Tr. at 19).[2]  At the fourth step, the ALJ determined Davis is not able to perform her past relevant work.  (*Id.* at 23).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. § 416.920(a)(4)(v) and (g)(1).  If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled.  *Id.*  at § 416.920(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the claimant is

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may require "a good deal of walking or standing . . . or . . . involve[] sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

disabled.  *Id.*  at § 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Davis' age, education, work experience, and RFC, the ALJ determined there are jobs Davis can perform that exist in significant numbers in the national economy, such as those of parts cleaner, line inspector, and ticket taker.  (Tr. at 24).  Therefore, the ALJ concluded Davis is not disabled.  (*Id.* at 24-24).

### III. Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).   Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A

district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Davis argues the ALJ improperly discredited her testimony regarding her pain and other subjective symptoms.  (Doc. 14).

A claimant may establish disability through testimony of pain or other subjective symptoms.  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  To do so, she must satisfy the three-part "pain standard" by showing (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged subjective symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged subjective symptoms.  *Id.*; *see also Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 2019 WL 581548, at *2 (11th

6

Cir. 2019) (citing *Dyer*, 395 F.3d at 1210); 20 C.F.R. § 416.929; SSR 16-3p.  A claimant's subjective symptoms testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability.  *Brown*, 921 F.2d at 1236 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1552 (11th Cir. 1986)).

An ALJ may discredit a claimant's testimony regarding her subjective symptoms provided the ALJ clearly articulates explicit and adequate reasons for doing so.  *Brown*, 921 F.2d at 1236; *Taylor*, 2019 WL 581548, at *2 (citing *Dyer*, 395 F.3d at 1210).  In evaluating a claimant's testimony and other statements regarding the intensity, persistence, and limiting effects of her subjective symptoms, an ALJ considers all available evidence, including objective medical evidence, such as medical signs and laboratory findings; the effectiveness of medication taken to alleviate subjective symptoms; treatment other than medication received to alleviate subjective symptoms; and the medical opinions of treating and non-treating physicians.  *May v. Comm'r of Soc. Sec. Admin.*, 226 F. App'x 955, 958-59 (11th Cir. 2007); 20 C.F.R. § 416.929(a) and (c)(1).  An ALJ cannot discredit a claimant's testimony regarding the intensity, persistence, and limiting effects of her subjective symptoms solely based on the lack of objective medical evidence. *Robinson v. Astrue*, 365 F. App'x 993, 997 (11th Cir. 2010); 20 C.F.R. § 416.929(c)(2); *see also*

*Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("Pain alone can be disabling, even when its existence is unsupported by objective evidence.").

Davis testified she "can't lift a lot"; has a limited range of motion in her neck, which prevents her from being able to drive; experiences severe pain in her neck with up or down movement; is limited in her ability to bend over and sometimes needs help straightening back up; is only able to twist or turn "a little bit"; experiences numbness in her arms, legs, and feet; is sometimes unable to walk; uses a cane; is unable to sustain the concentration and focus required to watch a thirty-minute television show; and cannot do chores around the house but, rather, spends her days "sitting or trying to lay down and get comfortable"; she also rated her average daily pain as eight on a ten-point ascending pain scale. (Tr. at 45-47, 49-53). The ALJ determined that while Davis' medically determinable impairments could reasonably be expected to cause some of her alleged subjective symptoms, Davis' statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. (*Id.* at 20).

The ALJ articulated multiple, explicit, and adequate reasons for discrediting Davis' subjective symptoms testimony. First, the ALJ determined the testimony was not consistent with the objective medical evidence of record or with statements made by Davis and noted in her medical records. (*Id.* at 20-21). Substantial evidence

8

supports this determination.  Davis had a discectomy and fusion at C3-C4, C4-C5, and C5-C6 in November 2016, after presenting with complaints of worsening axial neck pain that radiated into her left arm, increased incidents of falling, difficulty with fine motor skills of the hands, and clumsiness of the hands (e.g., frequently dropping things).  (*Id.* at 432).  Four weeks later, Davis reported her hand coordination had improved, she was no longer dropping things, and she had not fallen since before her cervical spine procedure.  (*Id.* at 443).  In May 2017, she reported her neck pain continued to improve and had mostly resolved and that the clumsiness she experienced with her hands had resolved, as well.  (*Id.* at 703).  She also reported she was ambulating better than prior to surgery.  (*Id.*).  A physical examination revealed Davis had full range of motion in her neck and a normal gait.  (*Id.*).  Although imaging suggested a failure to fuse at C4-C5 and C5-C6, Davis was not experiencing neck pain secondary to that failure.  (*Id.* at 704).  Her surgeon recommended a bone simulator to address the issue.  (*Id.*).  Later in May, Davis denied neck pain altogether.  (*Id.* at 705).

Davis had a hemilaminectomy and decompression at L4-L5 in September 2017, after presenting with low back pain that was not improved with epidural steroid injections.  (*Id.* at 630, 706-07).  During a follow-up appointment in November 2017, she denied low back pain and reported her activity-related radicular symptoms were much improved when compared to her pre-operative baseline.  (*Id.*

at 709). It was noted Davis felt both the procedure on her cervical spine and the procedure on her lumbar spine had significantly improved her symptoms and that she was pleased with the combined result. (*Id.* at 710). It was also noted her ability to tolerate physical activity continued to improve. (*Id.*). A physical examination revealed Davis had a normal gait, with full strength in her upper and lower extremities. (*Id.*).

Davis was treated for fibromyalgia, a medical condition characterized by widespread musculoskeletal pain accompanied by fatigue, at the Simon Williamson Clinic during the relevant period. With the addition of Lyrica and Cymbalta to her regimen, she reported feeling much better and less fatigued in August 2016, and reported she was doing better overall in January 2017. (*Id.* at 603, 611). Her fibromyalgia was assessed as stable in January 2017. (*Id.* at 614).

Moreover, records from Jasper Family Practice, where Davis received primary care, note Davis' malaise and fatigue were stable without medication from April 2015 until March 2017, at which time Davis reported increased depression. (*Id.* at 364, 368, 372, 376, 380, 384, 388, 392, 395, 399, 403, 407, 410, 508, 538, 543). However, the addition of Wellbutrin to Davis' regimen resolved the issue. (*Id.* at 521, 526).

Davis did report increased pain associated with her fibromyalgia in July 2017 and March 2018. (*Id.* at 531-32, 617). In March 2018, Davis' primary care

physician referred her to a pain management specialist to address her complaint of increased pain.  (*Id.* at 532).  A physical examination performed by the pain management specialist in April 2018 revealed Davis had a limited range of motion in her cervical and lumbar spines, as well as some radiculopathy in her legs.  (*Id.* at 714).  Additionally, Davis notes the pain management specialist diagnosed her with failed back syndrome in April 2018 and told her she may need additional surgeries. (Doc. 14 at 17).  However, these relatively few records of more recent complaints of increased pain, supported by the findings of a single physical examination, do not render the ALJ's credibility determination unsupported by substantial evidence.  The relevant question is not whether evidence supports Davis' arguments, but whether substantial evidence supports the ALJ's determination.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (discussing "narrowly circumscribed" nature of appellate review); *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) ("[W]e review the ALJ's decision for substantial evidence, but neither make credibility determinations of our own nor re-weigh the evidence."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").  The post-operative treatment notes indicating Davis received considerable pain relief and improvement of functional limitations from her cervical and lumbar spine surgeries and the records

11

noting Davis' fibromyalgia symptoms were under control (or, at least, not disabling), constitute substantial evidence supporting the ALJ's decision not to fully credit Davis' subjective symptoms testimony.

The ALJ also determined Davis' testimony regarding her subjective symptoms was not consistent with a consultative physical examination and a state agency opinion. (Tr. at 20). Dr. Ronald Borlaza performed a consultative physical examination of Davis in January 2017. (*Id.* at 450-55). Taking the results of his examination into account, Dr. Borlaza opined Davis could perform a limited range of light work consistent with the RFC formulated by the ALJ. (*Id.* at 454-55). Dr. Marcus Whitman reviewed the evidence of record in January 2017 on behalf of the state agency. (*Id.* at 65-79). Based on this review, Dr. Whitman, like Dr. Borlaza, opined Davis could perform a limited range of light work consistent with the RFC formulated by the ALJ. (*Id.* at 74-75).

Finally, the ALJ implicitly discredited Davis' testimony regarding her mental limitations because it was inconsistent with her reported daily activities. (*Id.* at 15-16). Substantial evidence supports this determination. On a function report completed in November 2016, Davis indicated she helps care for two grandchildren; is mentally capable of keeping up with her personal care; is able to pay bills, count change, and use a checkbook and/or money orders; and talks on the phone daily. (*Id.* at 207-10).

Davis claims that while the ALJ did not dispute her fibromyalgia was a severe impairment, he failed to evaluate the impairment adequately in the remainder of his decision.  (Doc. 14 at 15-16).  First, "[t]he mere fact that the AJL determined that [Davis'] fibromyalgia was a 'severe impairment' . . . does not mean that the ALJ was required to attribute severe pain to her fibromyalgia." *Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 988 n.5 (11th Cir. 2015); *see also Klaes v. Comm'r of Soc. Sec.*, 719 F. App'x 893, 897 (11th Cir. 2017) ("[E]ven if fibromyalgia explained [a claimant's] pain, that alone does not compel a finding of disability."); Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of [] impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the AJL's determination in that regard.").  Second, review of the AJL's decision confirms he did consider and evaluate Davis' fibromyalgia thoroughly.  (*See* Tr. at 12-14, 20-22).

Davis also argues the ALJ improperly discredited her testimony regarding the subjective symptoms of her fibromyalgia based solely on a lack of objective evidence supporting those symptoms.  (Doc. 14 at 14-17).  Additionally, she cites evidence that supports her testimony regarding the severity of her fibromyalgia.  (*Id.* at 16-17).  First, as stated, whether there is evidence in the record that supports a claimant's testimony regarding her subjective symptoms is not the relevant question.  *See Moore*, 405 F.3d at 1213 (discussed *supra*); *Henry*, 802 F.3d at 1268 (same);

*Werner*, 421 F. App'x at 939 (same).  Second, while it is true an ALJ cannot discredit a fibromyalgia claimant's testimony based solely on the lack of corroborating objective evidence, *Moore*, 405 F.3d at 1211, the absence of objective medical evidence was not the ALJ's only reason for discrediting Davis' testimony.  As discussed above, the ALJ relied on the opinions of Dr. Borlaza and Dr. Whitman as another ground for determining the symptoms and limiting effects of Davis' fibromyalgia were not as severe as she alleged.  *See id.* at 1211 (holding ALJ properly discredited fibromyalgia claimant's testimony based on lack of corroborative objective findings *and* inconsistencies between claimant's descriptions of her daily activities and her claims of infirmity).

"[C]redibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212.  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Here, the AJL clearly articulated adequate reasons for discrediting Davis' testimony regarding her subjective symptoms, and that determination is supported by substantial evidence.

## V. Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned finds the Commissioner's decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 30th day of September, 2020.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE